Fall River Canning Company, Respondent, vs. Industrial Commission and another, Appellants.

*October 15—November 9, 1943.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent there was a brief by *Carroll B. Callahan* of Columbus, attorney, and *Wilkie, Toebaas, Hart, Kraege &*

*Jackman* of Madison of counsel, and oral argument by *Oscar T. Toebaas.*

ROSENBERRY, C. J.    The commission found:

"That the applicant was employed by the respondent as a 'spike pitcher' and was performing service in said employment on July 14, 1940, in connection with the operation of a viner machine; that he was instructed by his superior to make some adjustment to the machinery which was located at the top of the viner; that there was a built-in ladder leading to the top of the viner, and the top was boarded over, at least in part, forming a platform; that pursuant to the instructions given, applicant climbed to the top of the viner; that the machine was in motion; that while upon the platform adjusting the machinery, his finger caught in a chain and sprocket, and he was thrown, falling to the ground, and thus sustained his injuries; that the chain and sprocket were located less than six feet from the platform level upon which applicant stood when injured; that they were open and unguarded; that the injury was caused by failure of respondent employer to comply with the provisions of order No. 1 of the General Orders on Safety prescribed by the commission.

"It follows that the respondent is liable to the applicant for fifteen per cent increased compensation."

No question concerning the primary compensation is raised in this case.    It is claimed that the employer violated a safety order of the commission known as general order No. 1, the material part of which is as follows:

"All vertical and inclined belts within six feet of floor or platform level and all pulleys and all horizontal belts within seven feet of floor or platform level . . . shall be completely inclosed or effectively guarded."

The question for decision is whether the top of the viner is a platform within the meaning of general order No. 1. Upon this point the commission said:

"The testimony establishes that applicant was instructed to make adjustments to the machinery while standing upon

the surface at the top of the viner. When those instructions were given, such surface became constituted a working platform for applicant's purposes. If there was question as to the character of the surface before the time of applicant's instructions, there could be no question as to its character and use as a platform following such instructions and actual use by the applicant of the surface as a platform upon which to perform his work."

The evidence is undisputed that the shaft in question was eleven and one-half feet above the ground. It was out of reach of any employee at work around the viner. The bounce boards or top of the viner were intended merely to keep the chaff and stuff from flying out of the viner. The top was not constructed with any idea that it was to be used as a platform or a place upon which to walk or stand. It would not support more than one hundred fifty pounds maximum. The boards were unsupported except at the edges. It appears from the testimony of the manufacturer of the Scott viners that there are four thousand such viners in operation in Wisconsin; that they are of standard construction. The witness testified that he had never seen a viner which had a guard over the shaft on top of the viner.

It is considered that the trial court correctly held that the roof or top of this viner is not a "platform." It appears to us that the reasoning of the commission is extremely legalistic. If the principle upon which the commission decides this case is carried to its logical conclusion, every place where a man is directed to stand becomes a platform even though it may never be used but once for that purpose and it was designed and used for an entirely different purpose. To so construe general order No. 1 is to deprive the employer of any opportunity to comply with the order and so protect himself against the infliction of a fifteen per cent penalty. No employer could ever know when the exigencies of an operation might require a workman to stand in some unusual and perhaps some un-

guarded place, and if such place thereby becomes a platform, then in order to protect himself an employer would have to inclose and effectively guard all pulleys wherever situated. The order prescribes that only those belts and pulleys within a certain distance from the floor or platform should be guarded which contemplates that some may remain unguarded. If the place where a man stands temporarily to make a repair becomes a platform, all pulleys and belts must be guarded. Even if the employee used a stepladder while standing on it making necessary adjustments he would be standing on a platform according to the reasoning of the Industrial Commission.

It is considered that that is not a fair construction of the order and so construed its reasonableness would be open to question.

*By the Court.*—The judgment appealed from is affirmed.